| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Beary Good, Inc.** |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF NEW YORK |
| Case number (if known) | 1-24-10579 |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11     02/20

Beary Good, Inc.'s Plan of Reorganization, Dated August 20, 2024

| | | |
|---|---|---|
| A. | **Description and History of the Debtor's Business** | Beary Good, Inc. (the "Debtor"), is a privately-owned corporation, upon which the sole shareholder and officer is John G. Pasternack (the, "Principal") with its primary place of business in Depew New York and its principal assets located in Erie County. The Debtor is in the business of owning and operating a restaurant and activities incidental thereto. The Debtor originally started as a franchise unit of Fresh Healthy Café circa 2014; however, in or about 2017, it transitioned to an independent company doing business as Welbeze Juice + Eatery, due to limited support from the franchisor and has since operated independently, serving fresh, healthy dining options.<br><br>For the past decade, the Debtor has operated a juice bar and café known for its healthy food and drinks, has been locally owned, and supported local farmers. The Debtor focuses on high-quality ingredients to ensure that its product tastes great and supports well-being. The Debtor's menu features everything from fresh cold-pressed juices to handcrafted sandwiches, wraps, and salads; all menu items are made fresh, on site.<br><br>In addition to serving a healthy menu, the Debtor has a commitment to sourcing its ingredients from sustainable vendors and prefers locally sourced produce whenever possible. At the Debtor's restaurant, one should expect to find a welcoming place to enjoy a meal that's good for you and the environment. |
| B. | **Events Leading to Chapter 11 Filing** | The path that led the Debtor to the point upon which it had to make the difficult decision to seek the relief of the Bankruptcy Court can be narrowed to five events: issues with collecting / paying its sales tax obligations, premature growth, a predatory lease, Covid-19 pressures, and (related) unanticipated labor costs.<br><br>Throughout its operation, the Debtor has struggled with its obligation to timely pay its NYS Sales tax obligations, resulting in periodic tax warrants, levies, and professional expenses. Prior to Confirmation, the Debtor changed its point-of-sale ("POS") provider to a service that automatically tracks sales and generates and pays sales tax obligation. Since the implementation of the new POS system, the Debtor has complied with its obligations to the NYS Department of Taxation and Finance.<br><br>After establishing its location in Depew, New York, the principal of the Debtor began development of a second location in East Amherst, New York. The second location was operated under a wholly separate entity Beary Good Foods, Inc., incorporated circa July 13, 2015 (the "Amherst Location"). The project was plagued with problems from its inception, including expensive lease space, costly development of the commercial space, issues with employee attrition, and, the unsustainable blow of Covid Pandemic and restaurant restriction that followed the pandemic. The Amherst location was forced to close its doors permanently in Fall 2023.<br><br>In or about May, 2021, the Amherst Location entered into a Lease Modification Agreement which extended the term of the Lease space in the Evans Sheridan Plaza. Although the Debtor was propping up the Amherst Location it was believed at the time that the Amherst Location would be successful after the constraints of the pandemic loosened. Unfortunately the Amherst Location never became sustainable, worse still, upon the Lease Modification, the Debtor (and the principal) executed a guarantee of the Amherst Lease |

The growing pains experienced in Amherst were only exacerbated by the Covid-19 Pandemic. The Debtor experienced substantial Covid-19 Pandemic related hardships primarily due to periodic shutdowns and mandated social distancing, but the flagship restaurant in Depew was able to remain open and is now in a much better financial position to reorganize.

In addition to obvious issues related to the general interruption of its business by Pandemic restrictions, was the rapid increase in labor costs, a subtle underlying pressure directly correlated to the Pandemic, where regulatory changes by New York State drove up minimum wage and made unemployment more attractive. This rapid increase in wages resulted in increased operational costs, new financial pressures and came during a period of strategic transitions and expansion.

Circa October 2023, the Amherst landlord commenced suit against the Tenant, the Debtor and the Principal of the Debtor and, after several unsuccessful attempts at negotiating resolution, the Debtor had no alternative but to seek relief of the Bankruptcy Court.

**C. Significant Events During the Bankruptcy Case**

The Debtor provides a healthy product and historically sales are seasonal in nature. Having received a temporary reprieve from its creditors, motivated by discussion(s) with Michael Brummer (the "Subchapter V Trustee"), whose advice and experience is an invaluable resource to a distressed Debtor, the Debtor has worked diligently to implement strategies discussed with the Subchapter V Trustee and develop new strategies for the future success of the restaurant. Clearly, the Debtor has a unique product that its clientele is passionate about, but how can the Debtor sustain a historically seasonal business post-confirmation?

In particular, at this early stage of restructuring the business operations, the Debtor must focus on changes which can be implemented quickly but are not capital intensive; the Debtor anticipates the continued development of the following changes post-Confirmation:

<u>Accessibility</u> – the Debtor intends to make its product more easily available by optimizing its online menu, including offerings across delivery platforms such as DoorDash, Grubhub, and UberEats. The objective is to increase channel sales and improve customer satisfaction. By optimizing existing resources, this approach leverages the Debtor's current capabilities and infrastructure to enhance sales potential with minimal additional expenditure.

<u>Financial Forecasting</u> – the Debtor is in the process of conducting an intensive review of current menu performance to identify high-demand items and underperforming dishes. The objective is to prioritize items that are popular, have higher margins, and maintain quality during delivery.

<u>Pricing</u> – the Debtor is in the process of analyzing current pricing structures in relation to competitor offerings and cost considerations. The objective is to make future price enhancements to ensure competitive pricing while maintaining profitability.

<u>Strategic Partnership</u> – the Debtor has been developing strategic partnerships with other local business in the sphere of health conscious activities including athletic gyms, yoga studios, and martial arts studios as a means to overcome the historic seasonality of its sales. The objective is to provide a menu of restorative products to the partner's clientele. It is anticipated that these partnerships will promote organic expansion to new locations, while avoiding the cost of expensive overhead.

<u>Product expansion</u> – the Debtor is developing new dishes and side options to enhance variety and cater to diverse customer preferences. The objective is to develop those products that are already familiar and desirable and encourage the sale of menu add-ons. .

<u>Sales and marketing promotions</u> – the Debtor has considered various new marketing campaigns, specifically those targeted at the 15-25 demographic; for example, the Debtor is investigating social media platforms. The objective is to reach his target demographic while avoiding the large cost of traditional television or print advertising.

<u>Improved Packaging</u> – the Debtor is considering developing packaging that maintains food quality during transit, enhances presentation, and supports sustainability. The objective is to improve customer experience and support (premium) pricing.

| Debtor | Beary Good, Inc. | Case number (*if known*) | 1-24-10579 |
|---|---|---|---|
| | Name | | |

This Bankruptcy filing has forced the Debtor to reevaluate its past and future business practices and, to ensure future success, It is developing a business plan with: (i) an implementation timeline, including clear milestones for each phase of the rollout, from menu development to launching on platforms and (ii) providing for periodic monitoring and evaluation, including tracking metrics to monitor sales, customer feedback, and operational efficiency post-implementation.

By implanting (some of) the strategies contemplated above, the Debtor is confident (echoing Mr. Bummer's sage advice) that the plan shows the ability to drive enough free cash flow such that the Debtor can make it through the slow season and prosper sufficiently enough to drive excess cash for both secured and unsecured creditors By implementing the aforementioned and upon the stabilization of the labor cost, moving forward the Debtor is confident it is positioned to forecast financials with greater certainty and sustain this new fiscal path as the Debtor continues to recover and rebuild.

**D. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**.

**E. Current and Historical Financial Conditions**

The Debtor's most recent financial statements, were filed with the Court in accordance with 11 U.S.C. §1116 and the future anticipated income is set forth in the projected financial information is attached hereto as **Exhibit "B"**..

**G. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) that is just sufficient to meet the projected Plan obligation and the needs of the business. The final Plan payment is expected to be paid on or about **December 31, 2029**.

Payment schedule attached hereto as **Exhibit "C"**.

### Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Beary Good, Inc.** (the "Debtor") from its cash flow from operations.

This Plan provides for:   **1**   classes of priority claims;
  **3**   classes of secured claims;
  **1**   classes of non-priority unsecured claims; and
  **1**   classes of equity security holders.

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata   **1.00**   % of the total amount of these claims, an estimated payment of **$ 6,500.00 (approx.)**   .This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**To Creditors:**

**Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim in order to be paid under any plan.

| Debtor | Beary Good, Inc. | Case number (*if known*) 1-24-10579 |
|---|---|---|
| | Name | |

**Voting:**      **Deadline For Voting to Accept or Reject the Plan.** You are entitled to vote to accept or reject the plan. A ballot is attached hereto as **Exhibit "D"** and you may vote by returning the ballot to

United States Bankruptcy Court
Western District of New York
Robert H. Jackson U.S. Courthouse
2 Niagara Square
Buffalo, NY 14202

**Your ballot must be received prior to the Confirmation Hearing or it will not be counted.**

---

### Article 2: Classification of Claims and Interests

**2.01**    **Class 1**.............................. All allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under §507(a)(2) and priority tax claims under §507(a)(8)).

**2.02**    **Class 2**.............................. **The following creditors have previously asserted perfected security interests in property of the estate**; each Claim and its proposed treatment in the Plan are set forth below in chronological order**:**

         **Alden State Bank (**"Alden"**)**
         UCC Financing Statement filed: July 9, 2013
         UCC Filing No.: 201307098280138
         UCC Lapse date: July 9, 2018
         **Treatment**: UCC lapsed, wholly unsecured by operation of the New York Uniform Commercial Code

         **KeyBank National Association** ("KeyBank")
         UCC Financing Statement filed: October 23, 2014
         UCC Filing No.: 201410238420197
         Continuations filed: April 23, 2019 and April 23, 2024
         UCC Lapse date: October 23, 2029
         **Treatment**: First Priority lien, claim wholly secured

         **U.S. Small Business Administration** (the "SBA")
         UCC Financing Statement filed: March 9, 2021
         UCC Filing No.: 202103095379727
         UCC Lapse date: March 9, 2026
         **Treatment**: Second Priority lien, claim to be bifurcated pursuant to 11 USC §506

         **NYS Dept. of Taxation & Finance** ("NYS")
         Tax Warrants filed: January 24, 2024 & February 28, 2024
         Outstanding Indebtedness: approx. $18,000
         Lien Lapse date: January 24, 2034 & February 28, 2034 respectively
         **Treatment**: Third Priority lien, claim wholly unsecured pursuant to 11 USC §506

**2.02(a)**    **Class 2a**............................ **Proof of Claim 4 of KeyBank.** KeyBank asserts that it has a lien on all of the defendant's assets, including its accounts, general intangibles, products, instruments, tools, supplies, records and all other property wherever located, described in greater detail in its commercial security agreement executed October 16, 2014. The Debtor and KeyBank entered into a cash collateral stipulation pre-confirmation and commenced payment in July, 2024 of $650/month. The Debtor proposes to pay the secured claim ($20,613.78) in full, at the rate of 5% interest per annum in installments as set forth in Exhibit C.

---

| | | |
|---|---|---|
| 2.02(b) | **Class 2b** ......................... | **Proof of Claim 3 of the SBA.** The SBA asserts that it has a lien on all of the defendant's assets, including its accounts, general intangibles, products, instruments, tools, supplies, records and all other property wherever located, described in greater detail in its commercial security agreement executed April 30, 2022. The Debtor requests that the court determine the value of the secured claims of the SBA, *to wit*: the Debtor proposes to pay the ($180,537.41) up to the value of assets, as identified on Scheduled A/B ($23,845), less the priority claim of KeyBank; for the avoidance of any doubt, the claim of the SBA shall be bifurcated into a secured claim in the amount of $3,231.22, the balance ($177,306.19) to be paid as a wholly unsecured clam. The secured claim (of $3,231.22) to be paid at the rate of 5% interest per annum in installments as set forth in Exhibit C. |
| 2.02(c) | **Class 2c**........................... | **Proof of Claim 1 of NYS.** NYS asserts that it has a lien in the same manner as a judgement in a civil action in accordance with subdivision (a) of Rule 5016 of the Civil Practice Law and Rules. The Debtor requests that the court determine the value of the secured claims of NYS; for the avoidance of any doubt, the NYS claim is wholly unsecured but, by operation of Section 1129(a)(9)(D) of the Code, a secured tax claim which would otherwise meet the description of a priority tax claim under §507(a)(8) of the Code is to be paid in the same manner and over the same period as prescribed in §507(a)(8). As more fully set forth in section 3.03 below, the unsecured claim of NYS will be bifurcated into a 507(a)(8) priority unsecured claim and general unsecured claim. |
| 2.03 | **Class 3**............................. | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4**............................. | Equity interests of the Debtor. |

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Or, in the event that the Plan is confirmed non-consensually under section 1191(b), each holder of an administrative expense claim allowed under §503 of the Code will be paid as set forth below. |
| | 3.02(i) | The claim of Michael J. Brummer, Esq. (the "Subchapter V Trustee") in the approximate amount of $3,000 (approx.), entitled to administrative priority treatment pursuant to 11 U.S.C. §503(b); as of the date of this Plan, no claim has been filed on behalf of the Subchapter V Trustee. Unless otherwise agreed, the Debtor proposes to pay the Subchapter V Trustee in installments as set forth in Exhibit C (if requested, the Subchapter V Trustee shall be paid in full on the effective date). |
| | 3.02(ii) | The claim of Gleichenhaus, Marchese & Weishaar, PC ("GMW"), in the amount of $9,000 (approx.), entitled to administrative priority treatment pursuant to 11 U.S.C. §503(b); as of the date of this Plan, no claim has been filed on behalf of GMW. Unless otherwise agreed, the Debtor proposes to pay GMW in installments as set forth in Exhibit C (while GMW is entitled to be paid in full on the effective date, counsel is satisfied with payment of remaining legal fees through the Plan). |

**3.03 Priority tax claims**   NYS alleges a claim in the amount of $ 18,138.90, of which $9,423.65 is alleged to be secured, $7,491.39 is alleged to be priority, and $1,223.86 is alleged to be unsecured, The Debtor proposes that the claim of NYS is wholly unsecured and shall be treated pursuant to Section 1129(a)(9)(D) of the Code (i.e. for the absence of any doubt, the alleged secured claim reclassified, is by its nature entitled to priority pursuant to Section 507, and the underlying tax and interest shall be paid in full with statutory interest thereon but, penalties alleged thereon, to be reclassified as non-priority unsecured).

**3.04 Statutory fees**   All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

### Article 4: Treatment of Claims and Interests Under the Plan

**4.01 Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☒ Impaired<br>☐ Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, in installments, on or within five years of Confirmation, as set forth in Exhibit C. |
| Class 2a – **Secured claim of KeyBank** | ☒ Impaired<br>☐ Unimpaired | The Class 2a claim of KeyBank is unimpaired by this Plan, and KeyBank's Claim to be paid in full, in cash, in installments, on or within five years of Confirmation, as set forth in Exhibit C. |
| Class 2b – **Secured claim of SBA** | ☒ Impaired<br>☐ Unimpaired | The Class 2b claim of the SBA is unimpaired by this Plan, and SBA's Claim shall bifurcated pursuant to Section 506, to a secured claim (of **$3,231.22**) to be paid in full, in cash, in installments, on or within five years of Confirmation, as set forth in Exhibit C, balance (of $177,306.19) to be paid at the same rate as other unsecured creditors |
| Class 2c – **Secured claim of NYS** | ☒ Impaired<br>☐ Unimpaired | The Class 2c claim of NYS is impaired; The claim of NYS is wholly unsecured and shall be paid pursuant to Section 1129(a)(9)(D) in the manner set forth in Article 3.03. |
| Class 3 – **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Each holder of a Class 3 Claim is impaired by this Plan and will be paid upon the effective date in one installment consisting of __1.00__ % of the total amount of their claims. |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired<br>☒ Unimpaired | Each holder of a Class 4 Claim is unimpaired by this Plan and property of the estate shall vest in the Debtor upon the Effective Date. |

### Article 5: Allowance and Disallowance of Claims

**5.01 Disputed Claim**

A *disputed claim* is a claim that has not been allowed or disallowed and, as to which, either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed.

**5.03 Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

The Debtor assumes its lease of commercial space within the plaza commonly known as 1402 French Road, Depew, New York 14043

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than __30__ days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

**7.01 Funding**

This Plan will be funded as explained in the exhibits attached hereto. All transfers of property under this Plan shall be made in accordance with any applicable provisions of nonbankruptcy law to the extent required by §1129(a)(16).

**7.02 Disbursing Agent**

The Disbursing Agent shall be Debtor, without prejudice to the Debtor assigning said responsibility to another individual / financial institution.

### Article 8: General Provision

**8.01 Definitions and rules of construction**

The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01(i) Filing Date / Order of Relief, the Date the above-captained case was commenced, May 23, 2024.

| Debtor | Beary Good, Inc. | Case number (*if known*) 1-24-10579 |
|---|---|---|
| | Name | |

| 8.01(ii) | <u>Allowed</u>, when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date. |
|---|---|
| 8.01(iii) | <u>Bankruptcy Code</u> shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code. |
| 8.01(iv) | <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Western District of New York having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151. |
| 8.01(v) | <u>Bankruptcy Rules</u> shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure. |
| 8.01(vi) | <u>Business Day</u> shall means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New York are authorized by law to close. |
| 8.01(vii) | <u>Chapter 11 Case</u> shall mean a case under Chapter 11 of the Bankruptcy Code in which Beary Good, Inc. is the Debtor. |
| 8.01(viii) | <u>Claim</u> shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code. |
| 8.01(ix) | <u>Class</u> shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan. |
| 8.01(x) | <u>Code / Section</u> shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code and Section shall refer to a Section of the Bankruptcy Code. |
| 8.01(xi) | <u>Confirmation</u> shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code. |
| 8.01(xii) | <u>Creditor</u> shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor. |
| 8.01(xiii) | <u>Disbursing Agent</u> shall mean the Debtor or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order. |
| 8.01(xiv) | <u>Final Order</u> shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals |

from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

| | | |
|---|---|---|
| 8.01(xv) | | Plan shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments. |
| 8.01(xvi) | | Proceedings shall mean the Chapter 11 Case of the Debtor. |
| 8.01(xvii) | | Professional Persons means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code. |
| 8.01(xviii) | | Proponent means John G. Pasternack |
| 8.01(xvix) | | Reorganized Debtor means the Debtor after confirmation of the Plan. |
| 8.01(xx) | | Secured Claim means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code. |
| 8.01(xxi) | | Unsecured Claim shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan. |
| 8.01(xxii) | | Other Definitions, a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover some terms defined herein are defined in the section in which they are used. |
| 8.02 | **Effective Date** | The effective date of this Plan shall be the either the 15th of the month (or the first business day following said date) following entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| | | |
|---|---|---|
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | Per §1123(a)(6), the Debtor is a closely held entity with all stock owned by the Plan proponent and the Debtor shall not issue any nonvoting equity securities. |
| 8.08 | **Retention of Jurisdiction** | The Bankruptcy Court shall retain jurisdiction to enforce and implement the terms and provisions of the Plan Proponent intends to object or cause the Disbursing Agent to object to the following number and amounts of claims in each class. |

### Article 9: Discharge

| | | |
|---|---|---|
| 9.01 | **Discharge** | If the Debtor's Plan is confirmed under §1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: |

    (i) imposed by this Plan; or

    (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under §1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in §1192;

    or

    (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

| Debtor | Beary Good, Inc. | Case number (*if known*) 1-24-10579 |
|---|---|---|
| | Name | |

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

Respectfully submitted,

**X** **/s/ John G. Pasternack**             **John G. Pasternack**
[Signature of the Plan Proponent]            [Printed name]

**X** **/s/ Robert B. Gleichenhaus, Esq.**        **Robert B. Gleichenhaus, Esq.**
[Signature of the Attorney for the Plan Proponent]    [Printed name]